IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–00937–EWN–MEH

CODIEJO APODACA, now known as CODIEJO MARTINEZ, and
MICHELLE I. CARLTON,

    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, an Illinois company, and
SANDRA H. PERKINS, an individual,

    Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is an automobile insurance case. Plaintiffs Codiejo Martinez and Michelle I. Carlton allege Defendants Allstate Insurance Company ("Allstate") and Sandra H. Perkins improperly denied them additional personal injury protection ("APIP") and uninsured or underinsured motorist ("UM") coverage and/or benefits following an automobile accident. Plaintiffs also seek to represent a class of umbrella policyholders whose policies they allege must be reformed to provide maximum UM coverage. This matter is before the court on "Plaintiffs' Motion for [sic] Remand," filed June 5, 2007. Jurisdiction is ostensibly premised upon 28 U.S.C. § 1332(d)(2).

# FACTUAL BACKGROUND

This case is before the court for a second time, having previously been removed from and remanded to Arapahoe County District Court on May 22, 2006, and February 28, 2007, respectively. (*See* Notice of Removal ¶¶ 9, 11 [filed May 7, 2007] [hereinafter "Notice of Removal"].) Following remand, Arapahoe County District Court granted Plaintiffs' motion to file a second amended complaint, with the resultant changes forming the basis of Defendants' second notice of removal. (*See id.*, ¶¶ 13–14.)

Plaintiffs' current operative complaint alleges seventeen causes of action against Defendants on behalf of the named Plaintiffs and "all residents of the State of Colorado who are insureds of [Defendant Allstate] under personal umbrella policies who are entitled to reformation of those insurance policies to include UM coverage." (*See* Notice of Removal, Ex. A–4 ¶ 176 [Second Am. Compl.].) Plaintiffs also, more restrictively, define their putative class as that subset of covered persons "*who were injured in an automobile accident*," and estimate the likely number of such class members to be in the "thousands."[1] (*See* Notice of Removal, Ex. A–4 ¶ 182–83 [Second Am. Compl.] [emphasis added].) Fourteen of Plaintiffs' claims are specific to Plaintiffs themselves, relating to Defendants' alleged failure to offer APIP and UM coverage and/or benefits following a June 7, 2002, automobile accident. (*See id.*, Ex. A–4 ¶¶ 46–47, 59–174 [Second Am. Compl.].) These claims seek injunctive or declaratory relief reading APIP and UM coverage

---

[1] Despite this more restrictive definition, Defendants never once mention it in either their briefing or notice of removal. (*See* Notice of Removal; Defs.' Resp. to Pls.' Mot. for Remand [filed July 9, 2007] [hereinafter "Defs.' Resp."].) I consider the effect of this omission below.

into Plaintiffs' liability and umbrella policies, and claim negligence, breach of contract, willful and wanton statutory bad faith, and common law bad faith resulting from Defendants' failure to offer and/or provide such coverage. (*Id.*, Ex. A–4 ¶¶ 59–174 [Second Am. Compl.].)

Three of Plaintiffs' claims are applicable to the entire putative class, but relate no additional facts regarding individual class members' automobile accidents. (*See id.*, Ex. A–4 ¶¶ 175–222 [Second Am. Compl.].) These claims seek injunctive or declaratory relief reading UM coverage into the class members' umbrella policies, and claim breach of contract and common law bad faith resulting from Defendants' failure to offer and/or provide UM coverage. (*Id.*, Ex. A–4 ¶¶ 201–22.)

On May 7, 2007, Defendants filed their second notice of removal, claiming jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), based upon Plaintiffs' second amended complaint. (*See* Notice of Removal ¶ 16.)

On June 5, 2007, Plaintiffs filed their second motion to remand, arguing that: (1) their individual claims relating to putative APIP coverage should not be aggregated in calculating the amount in controversy; and (2) Defendants' notice of removal fails to allege sufficient facts to show that the amount in controversy is met. (Plaintiffs' Mot. for [sic] Remand at 5–15 [filed June 5, 2007] [hereinafter "Pls.' Br."].) On July 9, 2007, Defendants filed a response to Plaintiffs' motion. (Defs.' Resp.) On July 30, 2007, Plaintiffs filed a reply in support of their motion to remand. (Pls.' Reply in Supp. of Mot. for [sic] Remand [filed July 30, 2007] [hereinafter "Pls.' Reply"].) This matter is fully briefed.

**ANALYSIS**

*1.     Legal Standard*

Federal courts are courts of limited jurisdiction, empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 [1986]) (further citations omitted). When a federal court lacks subject matter jurisdiction over a dispute, the court must remand the action to state court. 28 U.S.C.A. § 1447(c) (West 2007).
This rule is inflexible and without exception, requiring a court to deny jurisdiction in all cases where jurisdiction does not affirmatively appear in the record. *Amundson & Assoc. Art. Studio, Ltd. v. Nat'l Council on Compensation Ins., Inc.*, 977 F. Supp. 1116, 1120–21 (D. Kan. 1997) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites*, 456 U.S. 694, 702 [1982]).

Congress created diversity jurisdiction by statute to allow federal courts to entertain suits where parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C.A. § 1332 (West 2007). CAFA amended this basic diversity statute to confer federal jurisdiction over class actions involving at least 100 members and over $5 million in controversy when minimal diversity is met. *Prime Care of Nw. KS, LLC v. Humana Ins. Co.*, 447 F.3d 1284, 1285 (10th Cir. 2006).

The party seeking to invoke a federal court's diversity jurisdiction bears the burden of establishing the jurisdictional prerequisites are met. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (citation omitted). The Tenth Circuit has not definitively established

the standard of proof by which a defendant must establish the jurisdictional prerequisites, but, for the purposes of diversity jurisdiction, it requires that, "at a minimum[,] . . . the jurisdictional amount be shown by a preponderance of the evidence." *Id.*

Although the Tenth Circuit has not yet considered whether the burden of proof is different under CAFA than under basic diversity jurisdiction, at least five circuits have held that the burden remains unchanged, and this court is aware of no circuit court case holding to the contrary. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006); *Morgan v. Gay*, 471 F.3d 469, 473 (3rd Cir. 2006); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329–30 (11th Cir. 2006); *Brill v. Countywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). Moreover, multiple district court cases in the Tenth Circuit are in accord. *See, e.g.*, *Barnes v. First Franklin Fin. Corp.*, No. CIV-06-558-M, 2007 WL 1072171, at *1 (W.D. Okla. Apr. 4, 2007); *Lally v. Country Mut. Ins. Co.*, No. 06-cv-00531-WYD-MEH, 2006 WL 2092610, at *2 (D. Colo. July 27, 2006).

*2.     Evaluation of Claims*

Plaintiffs argue that Defendants have failed to meet their burden of demonstrating that the amount in controversy is met because they have failed to provide sufficient facts in their notice of removal to support such an assertion. (Pls.' Br. at 5–15.) Specifically, Plaintiffs contend that: (1) Defendants erroneously aggregated Plaintiffs' individual claims relating to putative APIP coverage with common class claims in calculating the amount in controversy; and (2) failed to provide sufficient facts regarding common class claims to prove that the jurisdictional minimum is met. (*Id.*) I assess each argument in turn.

### *a.     Aggregation of Individual Claims with Class Claims Under CAFA*

CAFA provides that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" the jurisdictional minimum. 28 U.S.C.A. § 1332(d)(6) (West 2007). The parties disagree over whether the phrase, "the claims of the individual class members," refers to the *common* claims of such members, or *any* claims of individual class members. (Pls.' Br. at 6–9; Defs.' Resp. at 11–13.) For the reasons set forth below, I find this phrase refers solely to the common claims of class members, and not to Plaintiffs' individual APIP claims.

Because the parties have identified no case law on point any my own research has revealed none, I turn to the cannons of statutory construction. "When interpreting the language of a statute, the starting point is always the language of the statute itself." *McGraw v. Barnhart*, 450 F.3d 493, 498 (10th Cir. 2006) (citation omitted). If the language is clear and unambiguous, its plain meaning controls. *Id*. (citation omitted). "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *Id.* at 499 (citation and quotation marks omitted). Where ambiguity exists, a court may resolve this ambiguity by looking at the purpose behind the statute. *Id*. at 500. Moreover, "statutes conferring jurisdiction upon the federal courts, particularly removal statutes, are to be narrowly construed in light of [federal courts'] constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005).

As a matter of plain meaning, I find that, because it is modified by the clause, "in any class action," no reasonably well-informed person could interpret the phrase, "the claims of individual

class members," as referring to anything other than common class claims. 28 U.S.C.A. § 1332(d)(6) (West 2007); *McGraw*, 450 F.3d at 499. In the alternative, even assuming this phrase to be ambiguous, I find that Congress's expressly stated purpose in CAFA of "providing for Federal court consideration of interstate cases of *national importance*" precludes the interpretation of this phrase as referring to *any* claims of individual class members. Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2(b)(2), 119 Stat. 4, 5 (2005) (emphasis added). Such an expansive interpretation would permit parties to invoke federal jurisdiction simply by showing that class members' individual claims — whether or not they were related to common class claims, and even if they were asserted exclusively against defendant-citizens from the class members' own states — exceeded the amount in controversy, so long as minimum diversity was also met; no issue of national importance would need necessarily be raised. By contrast, allowing only aggregation of common class claims ensures issues of national importance as "Congress enacted CAFA . . . in an effort to curb class action abuses stemming largely from state and local courts keeping cases of national importance out of Federal court." *Mattera v. Clear Channel Commc'ns*, 239 F.R.D. 70, 77 (S.D.N.Y 2006) (citation and internal quotation marks omitted); *accord Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 921 (D. Kan. 2007). Moreover, even if an expansive interpretation of this phrase were consistent with Congress's purpose, the Tenth Circuit has expressly directed that "if there is ambiguity as to whether . . . [a] statute confers federal jurisdiction[,]" courts must adopt "a reasonable, narrow construction." *Pritchett*, 420 F.3d at 1095. I accordingly find that "the claims of the individual class members" refers to common class claims.

In so holding, I note that Defendants' argument that "courts have not distinguished 'individual claims' from 'class claims' in determining the amount in controversy under CAFA and have included them in the aggregation without discussion" is unsupported by cited case law. (Defs.' Resp. at 11.) The one case Defendants do cite for this proposition is a district court case in which the court did not state whether the claims it was aggregating were common to all class members, but suggested in dicta that they were not. *See Plummer v. Farmer Group, Inc.*, 388 F. Supp. 2d 1310, 1313, 1318 (E.D. Okla. 2005) (stating that case was a "three count case with several theories of recovery asserted by thousands of potential plaintiffs" and observing that each of the "thousands" of class members alleged they had been damaged by the defendant's bad faith). Consequently, I find Defendants' cited authority inapposite.

### b. *Aggregation of Common Class Claims*

Because Plaintiffs' individual claims cannot be included in determining the amount in controversy, I must consider whether aggregation of the common class claims will satisfy the jurisdictional minimum.

"The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal."[2] *Laughlin*, 50

---

[2] I acknowledge Defendants' citation to a district court case stating that, when *neither* the complaint *nor* the notice of removal is sufficient to demonstrate the amount in controversy, "the court may also consider other relevant materials in the record." (*See* Defs.' Resp. at 5 [citing *Hanna v. Miller*, 163 F. Supp. 2d. 1302, 1305 (D.N.M. 2001)].) First, I find this case inconsistent with clear Tenth Circuit precedent. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) (stating that "[t]he burden is on the party requesting removal to set forth, *in the notice of removal itself*, the underlying facts supporting [the] assertion that the amount in controversy exceeds" the jurisdictional minimum [citation and internal quotation marks omitted]

F.3d at 873. Where the amount in controversy is not apparent on the face of the complaint, the party requesting removal bears the burden of "set[ting] forth, in the notice of removal itself, the underlying facts supporting [the] assertion that the amount in controversy" is met. *Id.* (citation and internal quotation marks omitted) (emphasis omitted). "Economic analys[es] . . . prepared after the motion for removal and purporting to demonstrate the jurisdictional minimum, [do] not establish the existence of jurisdiction at the time the motion was made." *Id.* Finally, "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Martin*, 251 F.3d at 1290.

In the instant case, Defendants never claim that the allegations in the second amended complaint are dispositive of the amount in controversy, and the notice of removal appears to disclaim such an argument. (*See* Defs.' Resp.; Notice of Removal at 18 [acknowledging that "no specific dollar amount is set forth in the [s]econd [a]mended complaint"].) Nonetheless, to the extent that the issue is disputed, I find that the allegations of the second amended complaint are not dispositive of the amount in controversy because they set forth no specific damage amounts.

---

[emphasis omitted] [second emphasis added].) Second, even if it were good law, *Hanna* only explicitly contemplates reference to four extrinsic sources of evidence: pleadings, attorney affidavits, admissions in open court, and a party's refusal to stipulate to a maximum amount in controversy. 163 F. Supp. 2d. at 1306. The only such evidence discussed in Defendants' briefing is Plaintiffs' alleged failure to stipulate *in their motion to remand* that they are not seeking damages less than the jurisdictional amount. (*See* Defs.' Resp. at 9 [alleging that "[i]n their [m]otion, Plaintiffs avoided any acknowledgment that they do *not* seek in excess of [$5 million]" [emphasis in original].) Nonetheless, in the light of the ensuing analysis, I find such negative evidence only weakly probative of the amount in controversy and insufficient to affect my ultimate holding. *See, e.g.*, *Varela v. Wal-Mart Stores, East, Inc.*, 86 F. Supp. 2d 1109, 1112 (D.N.M. 2000) (declining to draw "any negative inference" from plaintiff's failure to stipulate to damage cap absent "proof that her claims exceed the required amount in controversy").

(*See* Notice of Removal, Ex. A–4 at 42–46 [Second Am. Compl.] [requesting no specific damage amounts in Prayer for Relief].) Accordingly, I must assess whether the jurisdictional minimum is affirmatively established in the notice of removal. *Laughlin*, 50 F.3d at 873.

To direct my inquiry, I look at the notice of removal itself, which contains just three paragraphs purporting to prove that the amount in controversy is met with respect to the common class claims. (*See* Notice of Removal ¶¶ 18, 20, 21.) These paragraphs relate that: (1) 14,890 umbrella policies are currently in force in Colorado, which, if reformed as Plaintiffs seek, would provide between one and five million dollars in UM coverage each; (2) punitive damages could theoretically be recoverable on bad faith claims arising from Defendants' failure to offer UM coverage with the umbrella policies; and (3) Plaintiffs themselves seek reformation of their umbrella policy to provide one million dollars in UM coverage. (*Id.*) I assess each of these paragraphs in turn to determine whether — individually, or in combination — they prove by a preponderance of the evidence that the jurisdictional minimum is met.

### i. *Reformation of 14,890 Umbrella Policies to Provide Maximum UM Coverage*

Plaintiffs first argue that Defendants' allegations regarding the number of umbrella policyholders and the amount of UM coverage are insufficient to prove that either monetary damages to class members or the value of declaratory or injunctive relief exceeds $5 million. (Pls.' Br. at 9–13.) I consider each argument in turn.

A. MONETARY DAMAGES TO CLASS MEMBERS — In discussing the sufficiency of Defendants' allegations to prove that monetary damages to class members exceed $5 million, the

parties cite dueling cases to alternately prove or disprove — by analogy — that the jurisdictional amount is met. I assess each parties' authorities in turn.

Plaintiffs first point to *Miedema*, 450 F.3d at 1330–32, an Eleventh Circuit case holding that evidence describing the number of allegedly defective ovens sold and their total retail value was insufficient to establish the amount in controversy. (Pls.' Br. at 11.) As the court stated, such evidence in no way "reflect[ed] the compensatory damages, interest, and costs" that plaintiffs actually sought. *Miedema*, 450 F.3d at 1332. Plaintiffs next cite *Ongstad v. Piper Jaffray & Co.*, 407 F. Supp. 2d 1085, 1090–93 (D.N.D. 2006), which held that evidence relating the number of brokerage accounts under a defendant's control and the total value of assets in these accounts was insufficient to establish the amount in controversy. (*Id*. at 10–11.) As the district court explained:

> Standing alone, there is little that can be drawn from such figures. The Court is simply asked to speculate as to the potential large dollar amounts at stake based on the total value of the assets held by [the defendant]. However, as the [p]laintiffs correctly note, there is no inherent correlation between the total value of the assets and the amount of damages sustained as a result of unauthorized transactions. . . . Neither party has provided the Court with a reliable method to determine, or even guesstimate, that amount.

*Ongstad,* 407 F. Supp. 2d at 1092.

Defendants, by contrast, cite cases they claim show courts' willingness to draw reasonable inferences regarding the amount in controversy "based on simple mathematical calculations." (Defs.' Resp. at 6.) Specifically, Defendants cite cases in which district courts held the jurisdictional minimums satisfied from allegations that: (1) an insurer's computer program undervalued thousands of insureds' automobile values while adjusting claims, and each

undervaluation could yield $100,000 or more in bad faith damages; (2) 250,000 defective strollers were sold at a price of between twenty and thirty dollars each, and the class representative claimed she had to replace her stroller; and (3) a defendant processed 60,000 unlawful credit card refund transactions, and the complaint demanded $1,000 in statutory damages per transaction.[3] *Plummer*, 388 F. Supp. 2d at 1312–13, 1318; *Sanchez v. Wal-Mart Stores, Inc.*, No. Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706, *1, *2 (E.D. Cal. May 8, 2007); *Romeo v. Home Depot U.S.A., Inc.*, No. 06CV1505 I.E.G (BLM), slip op. at 3 (S.D. Cal. Oct. 30, 2006).

Because Defendants fail to distinguish Plaintiffs' cited authorities, and because I find Defendants' own authorities inapposite, Plaintiffs' authorities are most persuasive on the question of whether Defendants' allegations are sufficient. First, like the court in *Miedema*, I fail to see how the amount of UM *coverage* to be read into the class members' policies in any way reflects the actual *damages* such class members might seek. 450 F.3d at 1332. Second, like the court in *Ongstad*, I find Defendants have failed to provide any reliable method by which to calculate — or even "guesstimate" — the number of class members who might actually seek benefits under their reformed polices. 407 F. Supp. 2d at 1092. Like the defendant in *Ongstad*, Defendants simply ask this court to "speculate as to the potential large dollar amounts at stake" based upon the possibility that some unspecified percentage of the 14,890 policyholders may bring UM claims in

---

[3]Defendants additionally cite a Fifth Circuit case holding the jurisdictional minimum satisfied based on allegations that 500 people had suffered "severe" injuries. *See Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 545 (5th Cir. 2006). Nonetheless, as Plaintiffs correctly point out, this case is less probative than the others as the court analyzed the jurisdictional amount *sua sponte*, and because the plaintiff never argued the jurisdictional amount was *not* satisfied. (*See* Pls.' Reply at 5.)

some amounts up to their potential one to five million dollar policy limits. *Id*. While I would be remiss to not acknowledge that this is a theoretical possibility, I would be equally remiss in concluding, based on this *possibility*, that Defendants have thereby *proved*, *by a preponderance of the evidence*, that such events will actually transpire. Indeed, to draw such a conclusion, I would have to make bald assumptions unassisted by any precise proffers from Defendants regarding: (1) the length of time the reformed umbrella policies have been or will be in force; (2) the probability that, during this time, some of the 14,890 policyholders have been or will be in automobile accidents; (3) the probability that such accidents have or will involve an uninsured or underinsured motorist; (4) the types of benefits payable under Defendants' UM coverage; and (5) the likely amount of damage policyholders have or will sustain in these categories. Without any guidance from Defendants — whose, business, incidentally, involves calculating these precise risks and figures — I am unable to conclude whether the amount in controversy is met.

Moreover, Defendants' cited cases are distinguishable from the case at bar because, as Defendants themselves acknowledge, each involved a "simple mathematical calculation" from which a court could infer that the amount in controversy was met. (Defs.' Resp. at 6.) For instance, in *Plummer*, the court merely had to multiply the number of class members *who were already allegedly damaged* by the likely amount of this damage, as calculated from the damage claimed by the class representative. *See* 388 F. Supp. 2d at 1318 (stating that the court made "effortless mathematical calculations" based on the "reasonable inference that all class members [were] pursuing similar damages"). Likewise, in both *Sanchez* and *Romeo*, the courts merely had to multiply the number of putative class members *who were already allegedly damaged* by some

value approximating this damage as derived from either (1) the class representative's own damages, or (2) the statutory damages demanded in the complaint. 2007 WL 1345706 at *1, *2; No. 06CV1505 I.E.G (BLM), slip op. at 3. In the instant case, the number of policyholders who may pursue claims is undetermined and unestimated, and, as demonstrated below, the value of Plaintiffs' *own* claimed damages is disputed. Thus, I cannot conclude that Defendants' evidence proves that the monetary damage to class members satisfies the jurisdictional minimum.

In so holding, I observe that Defendants *might* have carried their burden by pointing this court to Plaintiffs' more restrictive definition of the putative class as comprising that subset of covered persons "*who were injured in an automobile accident*." (*See* Notice of Removal, Ex. A–4 ¶ 182 [Second Am. Compl.] [emphasis added].) This definition, in conjunction with Plaintiffs' allegation that *this* class likely comprises "thousands" of members, *could* have provided a sufficient means of calculating the amount in controversy, assuming Defendants' had *also* pointed to a reasonable estimate the average class member's claims. (*See id.*, Ex. A–4 ¶ 183 [Second Am. Compl.].) Nonetheless, because Defendants failed to mention this definition in their notice of removal — or even in their briefing — I cannot conclude that they have set forth sufficient underlying facts, in their notice of removal, to meet their evidentiary burden. *See Laughlin*, 50 F.3d at 873.

B. DECLARATORY OR INJUNCTIVE RELIEF TO CLASS MEMBERS — Defendants next argue, without citation to any additional facts or analogous argumentation in their notice of removal, that the value of declaratory or injunctive relief *itself* satisfies the amount in controversy

and is established by multiplying the number of insureds by the limits of their reformed policies.[4] (Defs.' Resp. at 16–17.) I disagree.

In cases seeking declaratory and injunctive relief, the amount in controversy is measured by "the value of the object of the litigation." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (citation and quotation marks omitted). This value, in turn, is measured by "either the value to the plaintiff or the cost to the defendant of injunctive and declaratory relief." *Id.* (citation omitted). Here, the value of the reformed policies is not the value of the coverage limits themselves, but rather this amount discounted by the probability that the policies may become payable. *See, e.g.*, *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (holding that, where injunctive relief would yield increased payouts on future claims, "the value of the injunction would be the present value of those future payments"). Thus, to demonstrate that the value of the reformed policies meets the jurisdictional amount, Defendants would have to have shown *both* the total coverage of the reformed policies *and* the probability that such coverage would be translated into benefits. In other words, Defendants

---

[4] Despite proposing this calculation, Defendants fail to conduct it themselves. (*See* Defs.' Br. at 16–17; Notice of Removal ¶ 20.) I note that 14,890 insureds multiplied by between one million and five million dollars each yields a putative "amount in controversy" of between fourteen and seventy-five *billion* dollars. Given such a robust figure, I find it inconceivable that Defendants failed to mention it in their notice of removal.

would have to have conducted the same type of analysis outlined above, or one very similar.[5] Because Defendants have failed to do so, I find they have failed to meet their burden.

In so holding, I note that Defendants' scattershot authority suggesting that courts hold declaratory or injunctive actions to place the *entire policy limits* of contested policies in controversy is unavailing. (*See* Defs.' Resp. at 16.) In each of Defendants' cited cases, the event triggering payout *had already actually occurred by the time of the action*, thus transforming the possibility that this event would occur into a certainty. *See Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 416, 416 (6th Cir. 1996) (on-job back injury had already occurred); *Home Ins. Co. of N.Y. v. Trotter*, 130 F.2d 800, 801 (8th Cir. 1942) (building had already burned down); *NCMIC Ins. Co. v. Sammon*, No. Civ. 05-456RKHJSM, 2005 WL 2648687, at *1 (D. Minn. Oct. 17, 2005) (chiropractor had already been sued); *Allstate Ins. Co. v. Hilburn*, 692 F. Upp. 698, 699 (S.D. Miss 1988) (automobile accident had already occurred); *Button v. Mut. Life Ins. Co. of N.Y.*, 48 F. Supp. 168, 169 (D. Ky. 1943) (plaintiff had already become disabled). Thus, Defendants' cases do not speak to the present value of polices that may or may not ever become payable. At most, Defendants' cases stand for the proposition that Plaintiffs' *own* coverage limits should be considered in controversy because Plaintiffs assert their UM benefits are *currently* payable. I consider this possibility below.

---

[5]I note, by way of example, that the cost of injunctive or declaratory relief mandating UM coverage would be the cost to Defendants of providing such coverage, which, in turn, could be the price Defendants would have charged for such coverage, or some greater figure assuming that UM coverage is not voluntarily offered. Thus, by multiplying the value of foregone premiums by 14,890, Defendants could have demonstrated whether the amount in controversy is met.

### ii. Theoretical Recovery of Punitive Damages on Class Claims for Bad Faith

Plaintiffs next argue that Defendants' allegation regarding the theoretical recovery of punitive damages is insufficient to prove the jurisdictional minimum is satisfied. (Pls.' Br. at 13–15.) I agree.

At least where they are pled, punitive damages may be considered in determining amounts in controversy. *See, e.g.*, *Woodmen v. World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) (citation omitted); *accord Watson v. Blankinship*, 20 F.3d 383, 385–87 (10th Cir. 1994). In the instant case, Defendants allege, without elaboration, that "punitive damages — even treble punitive damages — are theoretically recoverable on Plaintiffs' class action claims for bad faith." (Notice of Removal ¶ 21.)

This allegation is insufficient to satisfy Defendants' burden. First, the allegation fails to adequately establish that Plaintiffs even *claim* punitive damages. As Plaintiffs correctly point out, they were prevented under Colorado law from even stating a cause of action seeking punitive damages in their second amended complaint, thus foreclosing the possibility that Defendants could have *relied* on such a cause of action in their notice of removal. (Pls.' Br. at 13; Pls.' Reply at 9); *see also* Colo. Rev. Stat § 13–21–102(1.5) (2007) ("A claim for exemplary damages . . . may not be included in any initial claim for relief."). Defendants nonetheless counter that this argument is mere technicality, and that Plaintiffs clearly *intend* to pursue punitive damages as indicated by their allusions to "reckless disregard" and "willful and wanton" conduct in the bad faith claims of their complaint. (Defs.' Resp. at 13.) Even if true, this argument would be irrelevant for the

purposes of the instant motion as Defendants failed to timely make it in their notice of removal. (*See* Notice of Removal.)

Second, even if Defendants' allegation had been timely made and sufficient to prove that Plaintiffs seek punitive damages, such proof — standing alone — would say nothing about the *amount* by which the amount in controversy would thereby be augmented. Under Colorado law, punitive damages may only be granted to plaintiffs who receive actual damages, and then only in amounts equal to such damages, or up to treble this amount if a court finds that such an increase is appropriate and the defendant has acted willfully and wantonly. *See* Colo. Rev. Stat. § 13–21–102 (2007). Given this statutory construct, any calculation of punitive damages must start with a base figure of actual damages, which is conspicuously absent from Defendants' allegations. (*See* Notice of Removal ¶ 21.) Moreover, even assuming such a base figure could *sua sponte* be posited, multiplication of this figure by between one and three would provide no additional information regarding the amount in controversy because this court still has no method by which to estimate the number of policyholders who might bring bad faith claims. Finally, reformation of the umbrella policies could foreclose the availability of punitive damages altogether as punitive damages cannot be awarded atop equitable relief. *See, e.g.*, *Defeyter v. Riley*, 671 P.2d 995, 998 (Colo. 1983) ("[P]unitive damages are not recoverable in equity.").

In short, because Defendants fail to provide any means by which to estimate the number of class members who might file bad faith claims, or the potential amount of any such claims, suggesting that these claims could theoretically be trebled does nothing to establish the amount in controversy.

### *iii.     Plaintiffs' Own Class Claims*

Finally, Plaintiffs argue that Defendants' allegation regarding Plaintiffs' *own* class claims is insufficient to prove the requisite amount in controversy. (Pls.' Br. at 10.) I agree.

"Where insurance coverage is denied, the *maximum* 'amount in controversy' is the maximum limit of the insurer's liability under the policy." *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998) (citation omitted) (emphasis added). Here, the maximum limit of Defendants' liability under Plaintiffs' reformed umbrella policy is one million dollars, so the maximum amount in controversy would be the same.[6] *Id*. Even if this figure were trebled to reflect punitive damages, it would still be insufficient to satisfy the jurisdictional minimum.

In sum, because Defendants have failed to prove by a preponderance of the evidence that the requisite amount in controversy is met, this case must be remanded.

### *3.     Conclusion*

Based on the foregoing, it is hereby ORDERED that:

1.     PLAINTIFFS' motion to remand (#22) is GRANTED.

---

[6]Although the *maximum* limit of Defendants' liability on Plaintiffs' class claim is undisputed, the parties nonetheless dispute Defendants' *actual* exposure on this claim, and the sufficiency of Defendants' allegation relating the same. (*See* Pls.' Br. at 10; Defs.' Resp. at 9–10; Pls.' Reply at 3, 6–7.) Specifically, Plaintiffs argue that Defendants' allegation in the notice of removal cannot prove their *actual* exposure because this allegation merely states that Plaintiffs are seeking one million dollars in UM *coverag*e. (Pls.' Br. at 10; *see also* Notice of Removal ¶ 18. ) Beyond acknowledging this dispute to illustrate the factual contrast between the instant case and the facts in Defendants' own cited authorities, I need not address it further as it is  irrelevant to my ultimate holding.

2. This case is hereby REMANDED for further proceedings in Arapahoe County District Court.

Dated this 8th day of January 2008

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge